**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **SHENIQUA LOVELY**, individually and on behalf of all others similarly situated, | : | |
| Plaintiff, | : | Case No: |
| v. | : | Hon. |
| **EMPOWER RETIRMENT, LLC**, a Colorado limited liability company, | : | Mag. |
| Defendant. | : | |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Sheniqua Lovely (Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action against Defendant Empower Retirement, LLC ("Defendant"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Fed. R. Civ. P. 23, and common law.

2. "Today, [Defendant] as the second-largest retirement plan provider in the nation and a comprehensive wealth management leader, […] proudly serve[s] more than 17 million individuals and over 69,000 different organizations." [1] Defendant's "personalized tools and

[1] *See* https://www.empower.com/about-empower/our-history (last visited February 11, 2026).

solutions are aimed at helping everyone improve their financial confidence so they can pursue their amazing passions and reach their unique goals." *Id*.

3. In order to provide the aforementioned services, Defendant employs hourly, non-exempt employees with a number of job titles, including but not limited to Customer Service Representative, Retirement Representatives, Financial Advisor and Financial Customer Service Professional (hereinafter collectively referred to as "Representatives"). Defendant employs its Representatives in their brick-and-mortar contact centers and remotely throughout the United States. Defendant relies heavily on Representatives to among other things, receive and respond to inbound customer calls, troubleshoot inquiries, requests, and complaints, communicate critical plan updates and changes, process general account changes, provide financial information, and log information about customer service interactions into Defendant's systems.

4. Defendant employs hundreds of Representatives, providing customer service and support to Defendant's clients and clients' customers.

5. Defendant has employed hundreds of Representatives over the past three years to handle its clients' and clients' customers phone calls concerning various issues.

6. Defendant classified their Representatives as non-exempt and tasked them the primary job duty of providing over-the-phone and electronic customer service.

7. Regardless of the specific job title, all Representatives: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) regularly worked forty (40) or more hours per work week; (4) use the same timekeeping system; (5) use many (if not all) of the same computer programs; (6) are subject to the same relevant timekeeping and attendance policies; and (7) have the primary job duty of providing assistance to Defendant's clients and clients' customers.

8. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

9. One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

10. The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

11. Throughout their employment with Defendant, Plaintiff and other Representatives were required to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

12. Defendant violated the FLSA and common law by systematically failing to compensate its Representatives for work tasks completed before, during and after their scheduled shifts which resulted in Representatives not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited February 6, 2026).

13. More specifically, Defendant failed to compensate its Representatives for the substantial time they spent performing essential work tasks prior to clocking into and after clocking out of Defendant's timekeeping system each shift.

14. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they are entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

## PARTIES

15. Plaintiff is a resident of Montgomery, Alabama. Plaintiff worked for Defendant as an hourly, non-exempt remote customer service representative from approximately January 2021 through March 2023. Defendant compensated Plaintiff through the payment of an hourly rate, most recently at $30.00 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

16. Additional, putative collective members were or are employed by Defendant throughout the United States as non-exempt Representatives during the past three years and their consent to join forms will also be filed in this case.

17. Defendant holds itself out as a retirement plan financial holding company.

18. Defendant Empower Retirement, LLC ("Empower") is a Colorado limited liability company, with its principal office located at 8515 E. Orchard Rd., Greenwood Village, Colorado 80111.

19. Defendant maintains a registered agent for service of process listed as C T Corporation System, 7700 E. Arapahoe Rd., Ste. 220 Centennial, Colorado 80112.

## **JURISDICTION AND VENUE**

20. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

21. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

22. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

23. This Court has personal jurisdiction over Defendant because it conducts business within the state of Colorado, employs individuals within the state of Colorado, and maintains its principal place of business in the state of Colorado.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendant conducts business in this District, a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## **GENERAL ALLEGATIONS**

25. Prior to hiring prospective Representatives, including Plaintiff, Defendant provided them with a written/verbal offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

26. Upon information and belief, Defendant maintains documents demonstrating the

promised hourly wage for each Representative, including, but not limited to: offer letters, paystubs, and/or payroll records.

27. Plaintiff and the Representatives received offer letters from Defendant to work as Representatives, and they accepted Defendant's offers with the understanding that their base rate would be paid for all hours worked.

28. To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in Representatives, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

29. Plaintiff and the Representatives performed under their respective agreements with Defendant carrying out their job duties and responsibilities. More specifically, Plaintiff and the Representatives handled client inquiries and requests for service through various channels (live chat, phone, email, SMS); guided clients through account services, a broad range of financial transactions, plan inquiries, general information and research requests; and resolved issues. The aforementioned customer service was provided via inbound calls, and Plaintiff would utilize Defendant's applications and systems to track all events and customer service information. Plaintiff and the Representatives additionally performed the required unpaid off-the-clock work explained below.

30. Defendant paid its Representatives varying hourly rates.

31. Plaintiff and Defendant's Representatives typically worked five (5) days each week and up to forty (40) or more hours per week.

32. Defendant provided training to Representatives, like Plaintiff, with, *inter alia*, on

how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of each day; how to track their time in Defendant's timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training Defendant provided to all of its Representatives was substantially, if not entirely, the same and all Representatives were subject to the same and/or substantially similar policies and quality assurance reviews.

33. At all relevant times, Defendant controlled Plaintiff's and all other Representatives' work schedules, duties, protocols, applications, assignments, and employment conditions.

34. Defendant required Plaintiff and all other Representatives to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

35. Defendant instructed Plaintiff and all other Representatives to be "call ready" the moment their scheduled shift started.

36. To comply with Defendant's "call ready" instructions, Defendant's Representatives, including Plaintiff, were required to load and log into all of their essential work-related computer programs and applications ***before*** the start of their scheduled shifts so they could be prepared to field calls the moment their shifts began.

37. Defendant enforced their "call ready" policy through their uniform attendance, compensation, timekeeping, and schedule adherence procedures applicable to the Representatives.

38. Defendant additionally enforced its policy of requiring that all computer programs and applications be open and ready at the start of a Representative's scheduled shift through its schedule adherence and attendance metrics pursuant to which it monitored the Representatives'

clock in times in relation to their start of shift times, as well as the time the Representatives went into a "ready" status.

39. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, the Representatives. The discipline included, but was not limited to, written warnings, verbal warnings, and termination.

40. Defendant's Representatives also performed off-the-clock work during their unpaid 30-minute meal period, including returning before the end of their meal period to log back into Defendant's programs and software.

41. All of Defendant's Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work, and they could not perform their jobs without them.

42. Similarly, Defendant's Representatives, including Plaintiff, performed work off-the-clock after their scheduled shifts, after clocking out of Defendant's timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

43. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the Representatives in order to pressure them into performing pre-and post-shift work off-the-clock.

44. Defendant knew or should have known that Plaintiff and other Representatives were performing this pre-, mid- and post-shift work, as it was required by Defendant's training and policies and was necessary for Representatives to perform their primary job duties.

45. The pre-, mid- and post-shift off-the-clock time Plaintiff and all other

Representatives spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendant and was integral and indispensable to the Representatives' job responsibilities.

46. As a result of the off-the-clock work described herein, Plaintiff and all other Representatives were unlawfully deprived of approximately twenty-nine (29) to fifty-five (55) minutes of compensation every day.

47. At all relevant times, Defendant was able to track the amount of time Plaintiff and its other Representatives spent in connection with the pre-, mid- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed, thus breaching it agreements with the Representatives.

48. Defendant has known or should have known that the time spent by Plaintiff and other Representatives in connection with the pre-, mid- and post-shift activities is compensable under the law.

49. Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

50. At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre-, mid- and post-shift activities described herein.

51. Despite knowing Plaintiff and all other Representatives performed the pre-, mid- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

52. At all relevant times, Defendant's policies and practices deprived Plaintiff and the

Representatives of wages owed for the pre-, mid- and post-shift activities they performed.

53. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Representatives booted up and logged into their computers each shift, along with the time they logged into the timekeeping system.

54. Because Defendant required its Representatives, including Plaintiff, to perform pre-, mid- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are an inaccurate representation of the total amount of time Representatives spent working for Defendant. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they actually worked.

55. Defendant is in possession of the payroll records and timekeeping records that will illustrate exactly which weeks Plaintiff and the Representatives worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

56. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA-mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

57. Upon arriving at their computer, Defendant's Representatives were trained and required to follow a specific protocol to start up and log into Defendant's network and numerous software programs to access the necessary information to perform their work.

58. Before each shift, Representatives were required to undertake essential work tasks, which generally consisted of the following steps: turn on or wake up their computer; log into their computer with a username and password; connect to Defendant's virtual private network ("VPN")

with a username and password; and opening various programs and applications that were integral and indispensable to their job duties as Representatives, including, but not limited to, CRM, Citrix, Microsoft Teams, Microsoft Outlook, Avaya, Variant, CSI and Workday.

59. Only once all the applications were open and loaded, could Plaintiff and the Representatives clock in.

60. Defendant's Representatives had to complete much, if not all, of this process before: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendant's timekeeping program; and (3) fielding calls.

61. The boot-up and login process described above took substantial time on a daily basis, ranging from fifteen (15) to twenty-five (25) minutes per shift, or more, depending on how fast/slow the computers, systems and programs were operating.

62. Defendant's Representatives were not compensated for all of this time because, among other things, Defendant prohibited Representatives from clocking into their timekeeping software until a limited and finite number of minutes before the start of their scheduled shift, and the boot-up process took longer than this amount of time to perform each day.

63. The pre-shift off-the-clock work Representatives performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Representatives.

64. Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2)

pay them straight time for all regular hours worked up to forty (40) (overtime gap time); and (3) record all of the time that its Representatives, including Plaintiff, worked for Defendant's benefit.

65. If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "call ready" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

66. Because Defendant's Representatives typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

67. Defendant knew or should have known that Representatives performed uncompensated pre-shift boot-up and login work because Defendant required them to be fully "call ready" at the precise start of their scheduled shift while prohibiting them from clocking in early. had express and constructive knowledge that its Representatives began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "call ready" and clocked in on time.

68. Defendant's policies and practices discouraged its Representatives from recording all time worked.

**B. <u>Mid-Shift Off-the-Clock Work</u>**

69. Defendant promised/provided its Representatives a scheduled 30-minute unpaid meal period during each work shift.

70. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for

the entire meal period. C.F.R. § 785.19(a).

71. According to the U.S. Department of Labor ("DOL"), "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. Bona fide meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." (*See* DOL Fact Sheet #64 cited herein at fn. 2).

72. Instead of complying with the law, Defendant failed to provide its Representatives with legitimate bona fide meal periods because it required the Representatives to return to their computer stations before the end of their unpaid meal periods to unlock and log back into their computer and programs/applications and place themselves in a "ready" state so they could resume taking/making calls/emails the moment their meal periods concluded.

73. The off-the-clock mid-shift process took substantial time, approximately four (4) to five (5) minutes per shift. The process was similar, albeit truncated, to the pre-shift login and boot-up process described herein and this time went uncompensated.

74. Because Defendant's Representatives typically worked scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtimes work compensable at 1.5 times their regular rate of pay.

75. The unpaid off-the-clock work Plaintiff and other Representatives perform during their meal periods and prior to logging back into Defendant's system is compensable, directly benefits Defendant and the tasks undertake in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Representatives.

76. Defendant's management was aware that Plaintiff and other Representatives

performed this off-the-clock work but permitted and even rewarded it through Defendant's schedule adherence metrics.

C. **Post-Shift Off-the-Clock Work**

77. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Representatives were required to complete call documentation, check and respond to emails, close the programs and applications they used during their scheduled shifts, and shut down their system ***after*** their shifts concluded and ***after*** clocking out of Defendant's timekeeping system.

78. This resulted in Plaintiff and Representatives performing approximately ten (10) to twenty (20) minutes of off-the-clock work every shift.

79. Thus, in workweeks where Defendant's Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40) (overtime gap time); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendant's benefit.

80. The post-shift off-the-clock work Plaintiff and other Representatives performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Representatives' job duties and responsibilities.

**D. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>**

81. "Gap time claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

82. Plaintiff, and similarly situated Representatives, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

83. During the weeks that Plaintiff and the Representatives did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its Representatives.

**E. <u>Defendant Breached Valid and Binding Agreements with Plaintiff and All Other Representatives</u>**

84. Throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached its contracts with Plaintiff and its Representatives by not paying Plaintiff and the Representatives for all hours worked.

85. Defendant's failure to pay Plaintiff and its Representatives for each hour of work performed and that was required of them as Representatives was a material breach by Defendant.

86. As a result of Defendant's breaches, Plaintiff and the Representatives were deprived of wages owed to them under their respective agreements.

87. Defendant's contractual promises to pay Plaintiff and the Representatives' applicable hourly rates for each hour worked and 1.5 times their applicable hourly rates for all

overtime worked is evidenced by, among other things, the Plaintiff's and Representatives' earnings statements.

88. Plaintiff and all other Representatives are owed wages at their applicable hourly rates for the time that they worked off-the-clock during their employment with Defendant, including overtime wages.

89. Plaintiff and all other Representatives earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and all other Representatives no later than the pay day for the period in which the off-the-clock work was performed.

90. Despite the fact that Plaintiff and all other Representatives performed off-the-clock work pre-, mid- and post-shift, these off-the-clock hours were not peripheral tasks for which they were not owed compensation. Instead, the off-the-clock hours, which were performed by Plaintiff, and all other Representatives pursuant to not only their agreements with Defendant, but Defendant's verbal and/or written policies, training and direction, constituted principal work activities that were integral and indispensable to their work, and Defendant was contractually obligated to compensate its Representatives for their hours worked at their applicable regular hourly rates at which they were employed.

91. Defendant was contractually obligated to compensate Plaintiff and all other Representatives their applicable hourly rates of pay for *all hours worked*.

## FLSA COLLECTIVE ACTION ALLEGATIONS

92. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of:

> *All current and former hourly Representatives who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

93. Defendant is liable under the FLSA, for *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

94. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

95. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

96. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

97. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

98. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and for those unpaid hours under forty (40) associated with unpaid overtime; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, have worked for the benefit of Defendants.

99. Defendant's unlawful conduct has been widespread, repeated, and consistent.

100. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

101. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue – whether the amount of uncompensated pre-, mid- and post-shift off-the-clock work – does not vary substantially among the proposed FLSA Collective members.

102. Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

103. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

104. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 2119(c); 29 C.F.R. § 516 *et seq*.

105. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216. Unless, the Court promptly issues such notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

106. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly Representatives who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

107. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably

estimates there are hundreds or thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

108. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the mid-shift time Rule 23 Nationwide Class members spent on boot-up and login activities each shift is compensable under applicable law;

c. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications, and networks is compensable time under applicable law;

d. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

109. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

110. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

111. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

112. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

113. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

114. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

115. Plaintiff re-alleges and incorporates all previous paragraphs herein.

116. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

117. At all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

118. At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

119. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

120. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

121. Plaintiff either: 1) engaged in commerce; 2) engaged in the production of goods for commerce; or 3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

122. The FLSA requires an employer to pay employees for all hours worked at the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

123. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of

individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

124. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock every shift, and failed to pay these employees overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

125. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was significant.

126. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207. Further, all "overtime gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

127. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

128. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

129. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

130. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

131. Evidence of these contracts includes Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

132. For example, Defendant offered to compensate Plaintiff at a minimum of $24.00 per hour if she agreed to perform services for Defendant as a Representative. Plaintiff accepted Defendant's offer and performed her duties as a Representative in reliance on the offer.

133. Defendant breached its contractual promises by failing to pay Representatives at their fixed, pre-agreed-upon hourly rate for *all* of the hours worked. This time includes hours worked before Plaintiff and the Rule 23 Nationwide Class reached forty (40) hours per week and at a rate that averaged out to more than the applicable minimum wage.

134. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, were contractually entitled to varying minimum hourly rates within the applicable period.

135. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

136. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

137. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

138. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

139. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

140. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## NATIONWIDE UNJUST ENRICHMENT

141. Plaintiff re-alleges and incorporates all previous paragraphs herein.

142. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

143. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

144. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

145. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

146. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

147. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

148. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class for all of their work, which included that which they performed up to, but not reaching, forty (40) hours per week, and at a rate that averaged out to more than the applicable minimum wage.

149. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

150. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

151. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

152. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff' breach of contract claim (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff' unjust enrichment claim (Count III);

d. An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses, phone numbers, and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

e. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. An Order declaring Defendant's violations of the FLSA were willful;

h. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

i. An Order declaring Defendant was unjustly enriched by the off-the-clock work performed by Plaintiff and the members of the Rule 23 Nationwide Class;

j. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. An Order awarding such other and further relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: February 18, 2026

Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Kathryn E. Milz (IL 6297213)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the Proposed Collective*